J-S27045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: D.L.-P.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.C.(A.)G., NATURAL | : | |
| MOTHER | : | |
| | : | |
| | : | No. 319 WDA 2019 |

Appeal from the Order Entered January 31, 2019
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
No. 2017 AD 31

| | | |
|---|---|---|
| IN RE: T.R.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.C.(A.)G., NATURAL | : | |
| MOTHER | : | |
| | : | |
| | : | No. 320 WDA 2019 |

Appeal from the Order Entered January 31, 2019
In the Court of Common Pleas of Blair County Civil Division at No(s):
No. 2017 AD 31A

| | | |
|---|---|---|
| IN RE: T.L.L.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.C.(A.)G., NATURAL | : | |
| MOTHER | : | |
| | : | |
| | : | No. 321 WDA 2019 |

Appeal from the Order Dated January 31, 2019
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
2017 AD 31B

BEFORE:   OLSON, J., OTT, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                          **FILED JUNE 7, 2019**

_____
*   Retired Senior Judge assigned to the Superior Court.

In these consolidated appeals, Appellant, J.C.(A.)G. ("Mother") appeals from the orders entered January 31, 2019, that reinstated the August 15, 2017 decrees involuntarily terminating her parental rights to her male children, D.L.-P.H., born January 2009, T.R.H., born June 2007, and T.L.L.H., born June 2006 (collectively, "Children").[1]  We affirm.

We summarize the facts and procedural history underlying this appeal as follows.  **See** Trial Court Opinion, filed 11/14/17, at 1-18; Supplemental Trial Court Opinion, filed 2/1/19, at 1-6; N.T., 8/15/17, at 1-84; N.T., 1/25/19, at 1-22.  Blair County Children Youth & Families ("CYF" or "the Agency") has been involved with the family on two separate occasions.  First, in April 2009, CYF received reports regarding Mother's inadequate care of Children and pending felony charges for armed robbery.  Following a shelter care hearing, Children were placed in kinship foster care with their paternal great-uncle and great-aunt, J.M. and D.M. in April of 2009.

CYF filed dependency petitions as to Children on April 24, 2009; Children were adjudicated dependent on May 4, 2009.  Permanency review hearings were held in October 2009, January 2010, and April 2010.  In October 2009, Mother was incarcerated and facing a prison term of at least five years; Father was also incarcerated.  In January 2010, Children's goal was changed to permanent legal custodianship (relative) with a concurrent goal of adoption.  In April 2010, Children were placed in the custody of J.M. and D.M. in a

_____

[1] The parental rights of R.L.H., III ("Father") were also terminated on August 15, 2017; however, he did not appeal the termination.

subsidized permanent legal custodianship. On April 19, 2010, the court terminated Children's dependency; granted J.M. and D.M. legal and physical custody of Children; and afforded Mother and Father visitation rights.

In November 2015, Children were returned to Mother's physical custody. In February 2016, CYF caseworkers received a report that Mother was abusing Children. Following a shelter care hearing, Children were placed with their stepmother, A.N. Mother was directed to cooperate with all recommended services, obtain a mental health evaluation, and submit to random drug screens. After being removed from A.N.'s home, Children were once more placed in kinship care with J.M. and D.M.

A family service plan was established for Mother. Permanency review hearings were held in August 2016, February 2017, May 2017, and August 2017. Initially, Mother participated in supervised visitation with Children, although the visits were erratic. However, in May 2016, she was incarcerated on drug-related criminal charges. During her incarceration, she did not have visitation with Children, although she did send letters that could not be shared with Children due to their inappropriate content. In May 2017, Mother was sentenced to ten to twenty years of incarceration for the drug-related charges. At that time she sent some pictures and letters to be forwarded to Children, but had not had any other contact with Children. She acknowledged that Children had some behavioral issues that coincided with increased contact with Father.

On August 3, 2017, CYF filed petitions for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). On August 15, 2017, the orphans' court held a combined permanency review and hearing on the termination petitions. At the time of the hearing, D.L.-P.H. was eight years old; T.R.H. was ten years old; and T.L.L.H. was eleven years old. Children were represented during the proceedings by Guardian *ad litem* ("GAL"), Aimee L. Willett, Esquire. Mother, although represented by counsel, did not appear or testify on her own behalf. CYF presented the testimony of Wendy Whitlock, a therapist from Home Nursing Agency; Tawnya Plunkard, CYF caseworker; Jessilyn Garlena, a manager from Home Nursing Agency; and kinship foster parents D.M. and J.M.

Ms. Whitlock testified that she is D.L.-P.H.'s therapist. **See** N.T., 8/15/17, at 7. Ms. Whitlock diagnosed D.L.-P.H. with post-traumatic stress disorder ("PTSD"); he has significant issues due to early traumatic experiences, which included witnessing Mother's arrest. **Id.** at 8. Ms. Whitlock has been working weekly with D.L.-P.H. on cognitive behavioral therapy to deal with his trauma. **Id.** D.L.-P.H. mentioned missing his parents, but it was too early in the therapeutic process to begin addressing his relationship with either parent. **Id.** at 14.

Ms. Plunkard testified that she has been involved with the family since February 2016, and that, since Mother's sentence and May 2017 transfer to State Correctional Institution Muncy, there has been no contact from Mother. **Id.** at 17. Although Mother expressed a desire to remain in contact with

- 4 -

Children, she has not sent CYF or J.M. and D.M. any cards, letters, or gifts for Children. *Id.* at 18-19. As far as Ms. Plunkard was aware, Mother did not have contact with any of the family members. *Id.* at 19. Ms. Plunkard testified that D.M. and J.M. did not wish to take Children to the prison to visit Mother. *Id.* at 52-53. Additionally, Ms. Plunkard testified that due to D.M. and J.M.'s difficulty in caring for Children, CYF and the family were exploring alternate kinship placement options. *Id.* at 26-29.

Ms. Garlena testified that she is the blended case manager for T.L.L.H. as of February 2016, and that she referred T.L.L.H. for specialized trauma therapy. *Id.* at 54-55. As of the date of the first hearing, T.L.L.H. had not yet been able to begin this therapy. *Id.* at 56.

D.M. testified that she and her husband J.M. have had difficulty caring for the three boys; their kinship care was supposed to have been a temporary arrangement but has extended to almost eight years. *Id.* at 58-64. At the first termination hearing, D.M. testified that caring for all three children was emotionally and financially overwhelming. *Id.* at 64. The current custody plan is that J.M.'s sister, L.M., will take custody of T.L.L.H. while J.M.'s sister A.M. will take custody of T.R.H. *Id.* at 65-66. D.M. and J.M. planned to adopt D.L.-P.H. *Id.* Children are familiar with these family members and would live in close proximity to each other. *Id.* D.M. also noted that Children are volatile when together, and believed they would benefit from separate homes. *Id.* at 67-68. She represented to the court that Children were happy with this plan. *Id.* at 69.

J.M. testified that caring for all three children is emotionally and financially overwhelming. *Id.* at 73-74. He testified that it would be beneficial for Children to be separated but housed close together, with significant sibling contact. *Id.* at 76-77. J.M. testified that above all, he and his wife want Children to receive the support they need to "get better," and that the proposed custody plan would be the best way to do so. *Id.* at 80.

Following the conclusion of testimony, the orphans' court terminated Mother's parental rights. On September 19, 2017, Mother, acting *pro se*, mailed a notice of appeal from prison, which the prothonotary docketed on September 25, 2017. *See In re D. L.-P. H.*, 203 A.3d 306, *1-2 (Pa. Super. 2018) (unpublished memorandum). In this Court, Mother's counsel, Richard Corcoran, Esquire, filed an **Anders**[2] brief and accompanying petition to withdraw, asserting that Mother's appeal was untimely filed. *Id.* at 3. Children's GAL also filed a petition to quash Mother's appeal as untimely filed. *Id.*

On appeal, this Court concluded that Mother's appeal was timely filed as the certified dockets did not include a notation that notice of entry had been given, as required by Pa.R.C.P. 236(b). *Id.* Additionally, because Children's GAL did not set forth Children's preferred outcome on the record and where Children were able to express their preferences, this Court concluded that Children were denied their statutory right to legal counsel. *Id.* at 4-5 (citing

---

[2] *See Anders v. California*, 87 S. Ct. 1396 (1967); *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).

*In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017); *In re T.S.*, 192 A.3d 1080 (Pa. 2018)). Accordingly, this Court vacated the decrees without prejudice and remanded to the orphans' court to appoint legal-interests counsel for Children, for counsel to place Children's preferences on the record, and for a new termination hearing to be held if Children's legal interests were different from their best interests. *Id.* at 5-6.

On remand, the orphans' court appointed legal interests counsel, Beverly J. Mears, Esquire, for Children and conducted an additional hearing on January 25, 2019. At the hearing, Attorney Mears stated that she had reviewed the record thoroughly and met with all three Children individually, and that they understood the nature of the proceedings and the nature and length of Mother's incarceration. *See* N.T., 1/25/19, at 6-7. Additionally, it was clear that drugs had had a negative impact on Children. *Id.* at 7. Children wished to remain in their current living arrangements,[3] did not see Mother as a resource, and wanted Mother's rights terminated. *See* N.T., 1/25/19, at 6-8. One of the children even requested that Attorney Mears not refer to Mother as his mother. *Id.* at 7. Attorney Mears was unequivocal that all Children desired that Mother's rights be terminated. *Id.*

Additionally, the court spoke with Attorney Willett, Children's GAL. Attorney Willett represented to the court that she had met with Children on numerous occasions and they were consistent in their wishes to be adopted.

---

[3] T.R.H. and T.L.L.H. were placed together with paternal relatives. *Id.* at 10-11.

*Id.* at 17-18. Attorney Willett emphasized that from 2010 through the present hearing, Children had lived only briefly with Mother: approximately from November 2015 to the beginning of February 2016. *Id.* at 19. Thus, there was "not a lot of parental supervision for many . . . years involving the boys who presently are 12, 11 and 10 years old." *Id.* at 19.

Attorney Willett also introduced into evidence a recent incident where one of the children was confronted by one of Mother's friends on the street, and informed that the child would not be allowed to see his brother unless he began speaking with Mother. *Id.* at 18-20. The child did not wish to speak with Mother and the situation disturbed the child. *Id.* Another of the children expressed fear that, if Mother's husband is released from prison prior to Mother's release, Children may have to live with that individual, whom they fear. *Id.* Children "expressed concern" over being in a position where Mother could exercise any authority over them and wanted their resource families to be able to make decisions for Children in a way that "cannot be interfered with by others." *Id.* at 20.

Following the hearing, the orphans' court re-entered the orders terminating Mother's parental rights, and issued an opinion in support of its decision.[4] Mother timely filed notices of appeals and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

---

[4] In its opinion the trial court incorporated its original Pa.R.A.P. 1925(a) opinion dated November 14, 2017. *See* Supplemental Opinion, 1/31/19, at 3.

On appeal, Mother raises a single issue for our review:

Appellant is of the position that the evidence was insufficient to show it was in the children's best interests to terminate her parental rights, particularly in light of her efforts while incarcerated to maintain a relationship with the children.

*See* Mother's Brief at 8.

Mother argues that termination was not in Children's best interests, because she had made efforts to maintain a relationship with Children while incarcerated. *See* Mother's Brief at 9. Essentially, Mother's argument does not address the court's Section 2511(a) findings but challenges the Section 2511(b) findings. *Id.* at 10-12.

We review cases involving the termination of parental rights according to the following standard.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

We thus turn to the trial court's order terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a) and (b). The trial court terminated

Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). Although Mother has waived her challenge to the orphans' court's section (a) findings, we would nevertheless find any such challenge meritless. *See Krebs v. United Ref. Co. of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.,* 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc)*. Accordingly, we will focus our analysis on subsection (a)(2).

> Termination requires a bifurcated analysis:
>
> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The relevant subsection of 23 Pa.C.S. § 2511 provides:

> **(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *See In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108,

1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.* Further, "evidence concerning a parent's ability to care for another child is irrelevant and inadmissible in a proceeding to terminate parental rights with regard to the child at issue." *In re A.L.D.*, 797 A.2d 326, 338 (Pa. Super. 2002) (citations omitted).

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court, in addressing Section 2511(a)(2), concluded that

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*Id.* at 828; *see also In re D.C.D.*, 105 A.3d 662, 675 (Pa. 2014) (holding that incarceration prior to the child's birth and until the child was at least age seven renders family reunification an unrealistic goal and the court was within its discretion to terminate parental rights "notwithstanding the agency's failure" to follow court's initial directive that reunification efforts be made). The Court in *S.P.* further stated,

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). *See e.g. Adoption of J.J.,* 515 A.2d [883, 891 (Pa. 1986)] ("[A]

- 12 -

parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re*] *E.A.P.,* 944 A.2d [79, 85 (Pa. Super. 2008)](holding termination under § 2511(a)(2) was supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

*S.P.*, 47 A.3d at 830 (footnote omitted).

Here, the evidence supported termination pursuant to 23 Pa.C.S. § 2511(a)(2) as Mother's parental incapacity – namely, her long periods of incarceration and inability to properly and appropriately parent Children – could not be remedied.

Children first came into the custody of CYF in April 2009, when the oldest child was not quite three years old. Dependency petitions were originally filed due to Mother's inadequate care of Children and her arrest on felony criminal charges. Children remained in kinship care for almost six years, during which time paternal relatives were granted subsidized permanent legal custodianship of Children. Although Children were briefly returned to Mother's custody, they were again removed after CYF caseworkers received reports that Mother was abusing Children. During the pendency of the case, Mother was arrested and charged with drug offenses and eventually sentenced to ten to twenty years of incarceration.

During her incarceration, Mother indicated to caseworkers she would like to remain in contact with Children, but sent either letters with content too inappropriate to share with Children, or did not attempt to contact Children or

family members. The record does not reflect that Mother engaged in any services while incarcerated nor completed any family service plan objectives. While incarceration alone cannot constitute grounds for termination, two things are clear from the record: Mother's incapacity existed while she was not incarcerated, as evidenced by her continued abuse and neglect of Children and further arrests; and that while incarcerated, Mother made little to no attempt to provide any sort of parenting to Child.

Accordingly, we discern no error in the trial court's finding that clear and convincing evidence supported the termination of Mother's parental rights pursuant to Section 2511(a)(2), based upon Mother's continued incapacity that resulted in Children being without essential parental care, the cause of which "cannot or will not be remedied." **See Lilley**, 719 A.2d at 330; **Z.P.**, 994 A.2d at 1117.

Next, we must consider whether Children's needs and welfare will be met by termination pursuant to subsection (b). **See Z.P.**, 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." **Id.** The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. **Id.** Ultimately, the concern is the needs and welfare of a child. **Id.**

We have stated:

[b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible

- 14 -

dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

**Z.P.**, 994 A.2d at 1121 (quoting **In re C.S.**, 761 A.2d 1197, 1202 (Pa. Super. 2000)). The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. **See In re N.A.M.**, 33 A.3d 95, 103 (Pa. Super. 2011). Additionally, the court may emphasize the safety needs of a child. **See In re K.Z.S.**, 946 A.2d 753, 763 (Pa. Super. 2008). Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists and "[t]he extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." **Id.** "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." **In re B.,N.M.**, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

As noted, *supra*, the extent of any bond analysis depends on the circumstances of a particular case. **K.Z.S.**, 946 A.2d at 763. In the instant case, no analysis was necessary as it is clear from the record that there was

- 15 -

no bond between Mother and Children, and that the needs and welfare of Children are best met by termination.

First, regarding the bond or the lack thereof, there was no evidence of a bond introduced into the record. *Id.* Further, there was evidence indicating that Children were not bonded to Mother. All three Children were removed from her care at a very young age, and only briefly returned to her care from November 2015 through February 2016, at which time, Mother allegedly abused them. One of the children requested that his attorney stop referring to Mother as his mother. All three Children expressed concern regarding Mother's ability to make decisions regarding their care and custody; all three Children were clear and consistent in their requests that Mother's rights be terminated. Even if Mother had attempted to remain in contact with Children – a fact which is not reflected by the record – the focus of Section 2511(b) is not on Mother's bond with Children, but Children's bond with Mother. *Z.P.*, 994 A.2d at 1121.

Further, it is clear that Children's best interests are served by termination. The oldest child was twelve years old at the time of the termination hearing and at a minimum, Mother will likely remain incarcerated for another ten years: Children may not be minors at the time of her release. Children have complex psychological issues that require extensive trauma therapy, many of them related to experiences undergone in Mother's custody; their current caretakers are ensuring that they are receiving appropriate treatment, housing, and care for these issues. All three Children expressed

the desire for stability provided by their current placements.  It is in Children's best interests to establish some form of safety, permanency, and security in their current living situations and this stability may be achieved only through termination.

We discern no abuse of discretion in the trial court's conclusion that Children's needs and welfare are best served by termination.  *See Z.P.*, 994 A.2d at 1126-27; *K.Z.S.*, 946 A.2d at 763.

Orders affirmed.

Judge Ott joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/2019